# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**GLENDA A. TRIVETT,**

    **Plaintiff,**

v.                                                              **Case No: 5:12-cv-534-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

# MEMORANDUM OF DECISION[1]

Glenda A. Trivett appeals to the District Court from a final decision of the Commissioner of Social Security denying her applications for Social Security Disability Insurance and Supplemental Security Income. (Doc. 1). Unfortunately, Plaintiff's claim has now been pending for approximately nine years (her application was first made January 14, 2005). Most recently, her claim was remanded by U.S. Magistrate Judge Kelly (see *Trivett v. Commissioner*, Case No. 5:10-cv-337, Docs. 26, 27), a hearing was held by ALJ Joseph A. Rose on April 4, 2012, and her claim was again denied by the Commissioner on May 25, 2012.

Here, Plaintiff argues that despite this Court's remand order the Commissioner failed to properly evaluate her mental impairments, and also failed to adequately address and evaluate evidence from Dr. Zerby (principally related to her physical limitations) and other evidence related to her chronic diarrhea. (Doc. 19). Upon consideration of the briefs, the record, and with the benefit of a hearing I conducted on November 13, 2013, I agree with Plaintiff.

---

[1] This case is before me on consent of the parties. (See Docs. 15, 16).

**I.    BACKGROUND[2]**

Plaintiff was born in 1968, has a tenth grade education, but obtained a GED, and has past relevant work experience as a certified nurse's assistant, retail clerk, fast food worker, and cashier. On January 14, 2005, she protectively filed applications for disability insurance benefits and supplemental security income alleging an onset of disability as of March 31, 2003, due to anxiety attacks, bone and joint pain, low back pain radiating to both legs, severe muscle spasms and insomnia.  She also now claims chronic diarrhea as a limiting ailment.

Since filing her applications, <u>four</u> hearings have been conducted and <u>four</u> unfavorable decisions have been issued finding that Plaintiff was not disabled.  The first ALJ to hear this case, ALJ Franklin D. Holder, found on two separate occasions – on April 5, 2007 and, following the first Appeals Council remand, on March 25, 2008 – that Claimant had severe mental impairments of a mild depressive disorder, an anxiety disorder with a panic disorder, and a somatoform disorder with both psychological factors and a general medical condition, that she was limited to sedentary work with some additional limitations, that although she could not perform her past relevant work, she could perform other work in the national economy, and thus, that she was not disabled.  R. 14-30, 89-103.

She appealed the 2008 decision to this Court (see *Trivett v. Astrue*, Case No. 5:09-cv-12), and the Commissioner agreed to a voluntary remand of the case, which was then reversed and remanded with instructions to "properly discuss and evaluate the medical evidence concerning all of Plaintiff's mental and physical impairments."  R. 549-55.

On April 22, 2010, after another hearing (the third for Plaintiff), ALJ Apolo Garcia issued a decision finding Claimant not disabled.  R. 539-48.  Unlike the two earlier ALJ decisions, and

---

[2] The background of the claimant and history of her medical treatment is thoroughly covered in this Court's prior Order and will be restated liberally here.

despite explicit direction from this Court to properly consider the medical evidence concerning Plaintiff's mental impairments, ALJ Garcia found that Plaintiff had no severe mental impairments. The ALJ did find that the Plaintiff had degenerative disc disease of the lumbar spine, fibromyalgia, and a left piriformis syndrome, but was capable of light work and was, therefore, not disabled.

This Court, upon consideration of years of treatment (2002 – 2007) for depression, anxiety, and panic attacks, including treatment with Dr. Chi-Kwon Ng and Seven Rivers Community Hospital Emergency Room (Seven Rivers); as well as treatment with Dr. Gerald M. Abraham (June 2005 – September 2005), with office notes reflecting Plaintiff's depression, Post Traumatic Stress Disorder (PTSD), anxiety, and panic attacks (including weeks of crying); and an opinion by non-examining State Agency consultant Dr. Alvarez-Mullin that Plaintiff may have difficulty with detailed tasks, maintaining concentration and pace, and may have episodes of irritability that affect her ability to consistently relate to the public, U.S. Magistrate Judge Kelly reversed and remanded the Commissioner's 2010 decision. (See *Trivett v. Commissioner*, Case No. 5:10-cv-337, Docs. 26).

In his opinion, Judge Kelly also addressed why the opinions of Dr. Character (a consultative examining psychologist) and Dr. Wise (a non-examining psychologist) could not constitute substantial evidence to support the ALJ's decision. Specifically, Judge Kelly noted that neither Dr. Character nor Dr. Wise appear to have reviewed the years of records related to Plaintiff's depression, anxiety, and panic attacks, and neither had the opportunity to review the records from Dr. Abraham, who (again) diagnosed depression, PTSD, anxiety, and panic attacks. Further, as to Dr. Character, Judge Kelly recognized that the ALJ's reliance on her impression that more investigation is needed to rule out depression and anxiety disorder is *not* a determination that Plaintiff does not have these ailments. And lastly, with respect to Dr. Character, Judge Kelly

importantly points out that the ALJ overlooked a critical diagnosis – namely, that Plaintiff had a pain disorder associated with both psychological factors and a general medical condition.

On remand, ALJ Joseph A. Rose found Ms. Trivett had engaged in no substantial gainful activity since March 31, 2003 (having unsuccessfully attempted to work in 2007), and concluded at steps two and three that she suffers from the severe, non-listing level impairments of fibromyalgia syndrome, diabetes mellitus, obesity, depression, an anxiety disorder, and a somatoform pain disorder. R. 635-637. He further determined that she experiences mild restrictions in daily living activities, mild social functioning difficulties, and moderate difficulties in maintaining concentration, persistence or pace. R. 635.

Notably absent from this assessment is the severe impairment of degenerative disc disease and the left piriformis syndrome (related to her sciatic nerve pain) from the third ALJ opinion. Also, unlike the first and second ALJ opinions that restricted Plaintiff to sedentary work, ALJ Rose determined that Plaintiff retained the RFC to perform light work, with some limitations: (1) can occasionally balance stoop, kneel, crouch, crawl, and climb a ramp or stairs, but never climb a ladder, rope, or scaffold; (2) has to avoid concentrated exposure to extreme cold, as well as unprotected heights; (3) can perform only simple 1 to 2-step tasks and carry out only 1 to 2-step instructions; and (4) can only occasionally interact with the public. The last two limitations are likely intended to account for the assessment of non-examining psychologist Dr. Alvarez-Mullin, who is now given great weight by the ALJ. Ultimately, with the assistance of a vocational expert, ALJ Rose concluded that Plaintiff could perform work as a housekeeper or routing clerk.

## II. STANDARD

The five-step sequential evaluation process for determining whether an individual is disabled is now well known and is otherwise set forth in the decision of the ALJ. See 20 CFR §§ 404.1520(a), 416.920(a). *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

Nevertheless, "[t]he Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.

1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### III. DISCUSSION

The Plaintiff's credibility is discounted by the ALJ with respect to both her physical and mental limitations. With respect to her physical limitations, and principally her complains of pain and the degree of pain she experiences, the ALJ relies on certain statements related to Plaintiff's activities of daily living (ADLs), the fact that much of the imaging studies (x-rays and MRI) appear to show no abnormalities or only mild findings, and the asserted fact that the record fails to contain (what the ALJ refers to as) significant treatment, such as hospitalization, surgery, or emergency care. The ALJ adopts an RFC consistent with a non-examining state agency physician, Dr. Puestow, and in doing so discredits the assessment of an examining physician, Dr. Zerby.

This entire analysis is problematic (indeed erroneous), the Plaintiff argues, because although the ALJ found that Plaintiff has a somatoform pain disorder, the ALJ failed to adequately discuss or account for how that disorder impacts the Plaintiff's complaints of pain and resulting limitations, despite the nature of the imaging studies. In fact, the Plaintiff correctly notes that her medical records show a link between her pain and a psychological condition. Further, the Plaintiff argues that while the ALJ points out some medical records that appear benign, he does so while ignoring more significant findings that support Plaintiff's complaints – both physical and psychological. Indeed, with respect to her mental condition, the Plaintiff contends that the ALJ's

assertion that the evidence fails to show (again, what he refers to as) significant treatment, such as hospitalization, psychotherapy, or emergency care, is simply wrong.

I agree with the Plaintiff that substantial evidence does not support the ALJs ultimate RFC or his findings related to her credibility, the weight given to Dr. Zerby (or rather the reasons for discounting Dr. Zerby), or even his assessment of her gastrointestinal issues. I think that the following review of the medical record as a whole makes this clear.

To begin with, there can be no question that the Plaintiff has sought repetitive and constant treatment for depression, anxiety, and panic attacks, and that she has regularly received prescription medications to treat these conditions. In his remand Order Judge Kelly ably laid out this treatment history, which can be summarized as follows: "Beginning in March 2002 through November 2007, the record is replete with diagnoses and treatment for depression, anxiety and panic attacks by Dr. Chi-Kwong Ng and physicians at Seven Rivers Community Hospital Emergency Room ("Seven Rivers")." These records include notes such as "very depressed", increased depression, anxiety attacks, and tearful. R. 267, 284-86, 316-18, 321, 329-30, 353-56, 413, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 430, 431, 432, 433, 469, 470, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 519, 520. These records also support complaints of abdominal pain and intestinal adhesions, as early as 2003. E.g. R. 423-428. Notably, with respect to the intestinal adhesions, there is a record from a Dr. Quehouong Pam from August 2003 that surgery for the intestinal adhesions is not recommended as it would only provide temporary relief. Id. Lastly, these records contain various complaints of pain in her back, neck, and sometimes her extremities. Plaintiff also correctly notes that several ER visits in 2004 were related to her anxiety and pain. All in all, despite the ALJ's assessment that Plaintiff did not

receive significant treatment, Plaintiff recites that she visited her doctors some 40 times between 2002 and 2008, with at least 16 visits to the ER between 2002 and 2004 alone.

Dr. George Sidhom, a pain management specialist with whom Plaintiff treated in late 2004 and early 2005 is also helpful to Plaintiff's arguments in two particular respects. First, he administered several steroid injections to help Plaintiff control her reported pain, which is something that Plaintiff contends goes beyond mere "conservative" treatment. Indeed, Dr. Sidhom's notes would suggest that he would agree, as he draws a distinction between "conservative methods" and the need for "interventional nerve block therapy". See R. 404. And second (and perhaps more significantly), he creates a link between the Plaintiff's pain and psychological conditions insofar as he state that: "This patient suffers from chronic disabling pain which has caused psychological, social, and physical impairment." R. 403-404. He also says, on a separate page, that she suffers from "chronic disabling pain and tenderness over the facet joints," and that this is "occurring in conjunction with the underlying axial degenerative disease and has caused significant physical impairment along with psychological and social dysfunction." R. 405.

From June 2005 through September 2005, Plaintiff then treated with psychiatrist, Dr. Gerald M. Abraham for depression NOS, PTSD, anxiety, and panic attacks. R. 224, 226, 469-71. Records note that she was reported to be moody, had social anxiety, and in the September 10, 2005 office note, it was recorded that Claimant had been crying for three weeks, was forgetful and had short term memory loss. R. 469. During this period, she continued to receive medications.

A consultative examination with Dr. Lawrence Field is also informative. While he opined that Plaintiff had no impairments, his evaluation reveals that Plaintiff is experiencing pain, which he states is the cause of noted limitations in the Plaintiff's cervical, thoracic, and lumbar spines.

R. 438. Indeed, he notes that "all limitations are due to pain." Dr. Fields' impression includes fibromyalgia and anxiety with panic disorder. R. 438.

The ALJ relies in part on the report of Dr. Colleen Character, who also performed a consultative exam, insofar as he finds mild limitations in Plaintiff's ADLs and social functioning, and moderation limitations as to concentration, persistence, and pace. First, it certainly seems that Dr. Character's notes with respect to Plaintiff's ADLs would suggest something more than mild limitations. Plaintiff reported at her examination in April 2005 that while she was able to wash herself from the waist up, she needed assistance showering from her boyfriend, and also needed his assistance getting dressed and doing her hair. She further reported that her boyfriend (not her) does the shopping and cooking, and that others do the laundry, housework, and yard work.

The ALJ looks also to forms completed by the Plaintiff in March 2005 and August 2005, but these forms also seem to support something more than mild limitations. In particular, the ALJ states only mild limitations where the Plaintiff reported an ability to only "prepare meals once or twice every other week, pick up (around the house) once in a while, and keep her bed neat." R. 636. A review of those forms reveals further limitations: on the March 2005 form Plaintiff reports pain "24/7"; difficulty standing, walking, or sitting for any extended period of time; difficulty standing to cook, bending or lifting arms in the shower; difficulty sleeping; difficulty lifting a laundry basket; and, an inability to shop or do yard work. R. 194-95. In response to social activities she says "none." On the August 2005 form Plaintiff reports similar limitations and further states: "very few and far between do I cook anything to eat"; in terms of picking up around the house she reports that it takes her several hours; and, among other difficulties, she reports having trouble remembering things. R. 214-15.

Ultimately, while Dr. Character found – based on her physical examination, but with only a limited review of the Plaintiff's medical records, as noted previously by Judge Kelly – that Plaintiff had appropriate memory, concentration, and thinking, she did recognize (as Plaintiff argues) that Plaintiff had a "Pain Disorder Associated with both Psychological Factors and a General Medical Condition." R. 446. This impression appears consistent with Plaintiff's reported pain at the evaluation with Dr. Character, and is also consistent with her general medical record, as I have discussed.

In terms of Plaintiff's medical record, non-examining physician Dr. Alvarez-Mullin (for whom the ALJ apparently accorded great weight), offered a functional capacity assessment in September 2005. R. 486-88. While the law favors the government's argument that the third section of this form is to be considered, the "checked boxes" of part one are informative. Here, in part three Dr. Alvarez-Mullin explains that Plaintiff may have difficulty with detailed tasks and occasional difficulty maintaining concentration and pace. He also states that she may have episodes of irritability that may cause her difficulty relating to the public on a regular basis, though she appears capable of appropriate interaction with others. If we look at the boxes of part one, we can see where these concerns originate – for example, it is noted that Plaintiff has moderate limitations in her "ability to complete a normal workday and workweek without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 487. This overall assessment again is consistent with the above noted records, and supports the Plaintiff's argument that her psychological condition affects her ability to function.

Lastly, for purposes of this analysis, Dr. Robert Zerby's opinion is supportive of Plaintiff's position that the ALJ erred. Indeed, Dr. Zerby is a pain management specialist, a condition that

the record reveals the Plaintiff has, and has with an associated psychological nexus.  In his 2007 evaluation he makes findings of reduced ranges of motion of her cervical and lumbar spines.  R. 515-16.  These findings are not inconsistent with the findings of Dr. Field, who examined the Plaintiff in 2005, noting her limitations then were caused by pain.  Also in this evaluation Dr. Zerby noted some decreased strength testing in her upper and lower extremities.  While the strength testing results in her extremities may be new, it should be noted that this evaluation was prepared at a later date then the records cited by the ALJ, and, perhaps more importantly, pain in her extremities themselves is not new.  In addition, Dr. Zerby directly addresses this worsening condition, where he states that he has treated the Plaintiff three or four times over the past two years, finds her "becoming progressively worse," and notes that her range of motion capability and "grip strength and strength is increasingly weaker and weaker."  R. 517.  Further, Dr. Zerby read the imaging studies to reveal evidence of arthrosis in the cervical, thoracic, and lumbar spines, again though, pain in these areas for the Plaintiff is not new.  Indeed, with respect to Plaintiff's spine, in his 2010 opinion the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment.  (Notably, in the most recent opinion this ALJ did not find her degenerative disc disease to be a severe impairment.)  In light of the above discussion, it is difficult to agree that Dr. Zerby's evaluation should be afforded little weight, as the ALJ did.  While the determination as to whether she can perform work is made by the Commissioner, Dr. Zerby's assessment that she is unable to do so was not unfounded: he based it on her pain (again, something with years of medical records to support), as well as her reduced range of motion (which he recorded, along with her reduced strength, and acknowledged it was worsening).

Finally, with respect to her gastrointestinal issues, I agree with the Plaintiff that these issues were neither adequately addressed nor accounted for in the RFC.  Despite complaints related to

intestinal adhesions, dating back to 2003 and 2004; a surgical consult regarding the intestinal adhesions, as well as regular treatment and office visits related to the intestinal adhesions; a diagnosis of gastritis in at least December 2004; the chronic digestive disease gastroesophageal reflux disease (GERD, diagnosed November 2007); and, more recently, treatment for a bulging and "extremely painful abdomen" and diarrhea in August 2011; abdominal pain and chronic diarrhea in September 2011; and a record from Citrus Gastroenterology from September 2011 reporting that Plaintiff had been suffering from "chronic diarrhea" since June 2010 (over a one year span), with "7 loose bowel movements a day," the ALJ found that the evidence failed to show significant treatment for her gastrointestinal issues, and specifically that the evidence failed to show chronic diarrhea that had lasted or was expected to last twelve months. The evidence simply does not support this conclusion.

Given all of this evidence, I cannot say that substantial evidence support the ALJ's residual functional capacity assessment, nor can I say that the Plaintiff's mental impairments were properly considered – especially with respect to her pain, and, as a result, her credibility, or that Dr. Zerby's opinion was properly weighed, or even that the Plaintiff's gastrointestinal issues were appropriately considered and account for. Accordingly, because the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal," *see Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994), I am compelled to reverse this case.

## IV. <u>CONCLUSION</u>

Based on the determination that the Commissioner's decision should be reversed, I must determine whether this case should be remanded for an award of benefits.

Although the proper remedy for errors is generally a remand for further proceedings – and not an award of benefits – the Commissioner does not receive "endless opportunities to get it right." *Goodrich v. Commissioner of Social Security*, No. 6:10-cv-1818-Orl-28DAB, 2012 WL 750291, at * 14 (M.D. Fla. Feb. 7, 2012)(quoting *Seavey v. Barnhart*, 276 F.3d 1, 13 (1st Cir. 2001)). Some courts " have exercised . . . a form of equitable power to order benefits in cases where the entitlement is not totally clear, but the delay involved in repeated remands has become unconscionable." *Id.*; *see also Morales v. Apfel*, 225 F.3d 310, (3rd Cir. 2000)(remanding for benefits because ten year delay was unconscionable); *Sisco v. United States Dept' of HHS,* 10 F.3d 739, 746 (10th Cir. 1993)(remanding for benefits and noting that Social Security Administration was not entitled to adjudicate case "ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion"); *Rohan v. Barnhart*, 306 F.Supp.2d 756, 770-72 (N.D. Ill. 2004) (remanding for benefits due to unconscionable delay of eleven years and obduracy); *Frazee v. Barnhart*, 259 F.Supp.2d 1182, 1202-03 (D.Kan. 2003)(remanding for benefits after ALJ had two chances to make a proper determination but failed to do so in a case pending almost ten years).

Here, the undersigned is concerned by the length of time the Commissioner has had Plaintiff's claim in consideration. Approximately nine years have passed since Plaintiff applied for benefits, during which time there have been four administrative hearings, one remand by the Appeals Council, and two remands by this Court. The substantial delays in this case were caused by "deficiencies that were not attributable to Plaintiff's error." *Rohan*, 306 F.Supp.2d at 771. If

the Court remands for further administrative proceedings, Plaintiff will be faced with an even longer delay, without any assurance that the Commissioner finally will get it right.

Indeed, despite four opportunities to conduct a proper determination, the Commissioner has failed to do so.   This is particularly troubling because the past four decisions by three different ALJs have been based on a review of substantially the same medical evidence related to Plaintiff's condition.   The most recent decision contains concerns similar to the earlier decisions, especially insofar as Plaintiff's mental limitations were not properly considered.   Moreover, a remand for reconsideration of Plaintiff's credibility likely will result in another hearing.   However, since the evidence should remain the same, it is difficult to see what value yet another hearing would have.

Under these circumstances, the undersigned finds that the nine year delay that Plaintiff has experienced thus far is unconscionable and that this case should be remanded for an award of benefits.   Indeed, "Plaintiff need not 'wait with the patience of Job for yet another remand.'" *Rohan*, 306 F.Supp. 2d at 771 (quoting *Smith v. Califano*, 637 F.2d 968, 973 n.1 (3rd Cir. 1981)).

For the reasons stated above, the ALJ'S decision should be **REVERSED** pursuant to sentence four of Section 405(g), and **REMANDED** for calculation of benefits to Plaintiff.

**DONE and ORDERED** in Ocala, Florida on December 17, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Counsel of Record